**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| STEVE KLEIN, Individually and on Behalf of All Others Similarly Situated, | Case No: 1:25-cv-01058 |
| Plaintiff, | Judge: Joan H. Lefkow |
| v. | |
| WALGREENS BOOTS ALLIANCE, INC., STEFANO PESSINA, ROSALIND G. BREWER, GINGER GRAHAM, TIMOTHY C. WENTWORTH, JAMES KEHOE, and MANMOHAN MAHAJAN, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF ORHAN KURT FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF COUNSEL**

Orhan Kurt ("Movant") respectfully submits this memorandum of law in support of his motion for an Order, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a)     appointing the Movant as Lead Plaintiff for the Class of all purchasers or acquirers of common stock of Walgreens Boots Alliance, Inc. ("Walgreens" or the "Company") between April 2, 2020 and January 16, 2025, inclusive (the "Class Period"); and

(b)     approving Movant's selection of The Rosen Law Firm P.A. as Lead Counsel for the Class and the law firm of Heffner Hurst as Liaison Counsel for the Class.

1

## INTRODUCTION AND BACKGROUND

This securities fraud class action was commenced on January 30, 2025 against Defendants Walgreens, Stefano Pessina, Rosalind G. Brewer, Ginger Graham, Timothy C. Wentworth, James Kehoe, and Manmohan Mahajan (collectively, "Defendants") asserting violations of Section 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder. That same day, a PSLRA early notice was issued advising class members of the pendency of the action and the deadline for class members to seek lead plaintiff status. *See* Declaration of Matthew Hurst, filed herewith ("Hurst Decl."), Ex. 1.

Walgreens operates as a healthcare, pharmacy, and retail company in the U.S., the United Kingdom, Germany, and internationally. Walgreens' U.S. Retail Pharmacy[1] segment includes, among other things, the operations of retail drugstores, health and wellness services, and specialty and home delivery pharmacy services. A significant percentage of sales for the U.S. Retail Pharmacy segment is derived from the sale of prescription drugs, the majority of which are reimbursed by third-party payors, including federal healthcare programs.

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) contrary to the Company's purported commitment to improved regulatory compliance, Walgreens continued to engage in widespread violations of federal law governing the dispensation of prescription medication and reimbursement for the same; (2) the foregoing conduct, when revealed, would subject Walgreens to a heightened risk of further regulatory scrutiny, civil liability, and reputational harm; (3) Walgreens' revenues from the sale of prescription medications were

---

[1] Walgreens has also referred to the U.S. Retail Pharmacy segment as "Retail Pharmacy USA" and the "United States Segment."

unsustainable to the extent that they derived from unlawful conduct; and (4) as a result, the Company's public statements were materially false and misleading at all relevant times.

Then on January 17, 2025, the U.S. Department of Justice ("DOJ") announced the filing of a civil complaint (the "DOJ Complaint") alleging that Walgreens "dispensed millions of unlawful prescriptions in violation of the Controlled Substances Act (CSA) and then sought reimbursement for many of these prescriptions from various federal health care programs in violation the False Claims Act (FCA)." Specifically, the DOJ Complaint "alleges that, from approximately August 2012 through the present, Walgreens knowingly filled millions of prescriptions for controlled substances that lacked a legitimate medical purpose, were not valid, and/or were not issued in the usual course of professional practice", including "prescriptions for dangerous and excessive quantities of opioids, prescriptions for early refills of opioids and prescriptions for the especially dangerous and abused combination of drugs known as the 'trinity,' which is made up of an opioid, a benzodiazepine and a muscle relaxant." In addition, the DOJ Complaint expressly alleged that Walgreens was "aware of its obligation to exercise corresponding responsibility" and that its business practices were at odds with earlier commitments to "implement or maintain a variety of compliance measures moving forward."

On this news, Walgreens' stock price fell $1.56 per share, or 12.06%, over the following two trading sessions, to close at $11.37 per share on January 21, 2025. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## ARGUMENT

### I.  MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA sets forth procedures for the selection of Lead Plaintiff in class actions brought under the Act. *See* 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA directs courts to consider any motion to serve as Lead Plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B)(i) and (ii).

The PSLRA provides a "rebuttable presumption" that the most "adequate plaintiff" to serve as Lead Plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice …;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, Movant satisfies all three of these criteria and thus is entitled to the presumption that Movant is the most adequate plaintiff of the class and, therefore, should be appointed Lead Plaintiff.

### A.  Movant's Motion is Timely

On January 30, 2025, pursuant to Section 21D(a)(3)(A)(I) of the PSLRA, a notice was published announcing that a securities class action had been filed against Walgreens and certain of its officers, and advising purchasers of Walgreens common stock that they had until March 31, 2025 to file a motion to be appointed as lead plaintiff. *See* Hurst Decl., Ex. 1.

4

Movant files the instant motion and submits herewith Movant's sworn certification attesting that he is willing to serve as a representative of the Class and willing to provide testimony at deposition and trial, if necessary. *See* Hurst Decl., Ex. 2. Movant therefore satisfies the first PSLRA requirement that a putative lead plaintiff either file a complaint or make a motion in response to a published notice.

### B. <u>Movant Has The Largest Financial Interest in the Action</u>

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff … is the person or group of persons that … has the largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii). "While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Trust v. Molex*, 229 F.R.D. 577, 579 (N.D. Ill. 2005). Of the *Lax/Olsten*-styled[2] factors in determining the largest financial interest, the financial loss is the most significant factor. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period". *In re Bally Total Fitness, Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005).

Movant lost approximately $479,049 in connection with purchases of Walgreens common stock. *See* Hurst Decl., Ex. 3. Movant is not aware of any other individual or group that has suffered greater losses in Walgreens securities during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

---

[2]  *Lax v. First Merch. Acceptance Corp.*, 1997 WL 461036 *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Secs. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

**C.      Movant Satisfies the Requirements of
             Rule 23 of the Federal Rules of Civil Procedure**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification—a *prima facie* showing that the Movant satisfies the requirements of Rule 23 is sufficient. At the lead plaintiff stage, "[a] wide-ranging analysis under Rule 23 is not appropriate and should be left for consideration of a motion for class certification. This inquiry, therefore, focuses on the qualities of the class representatives enumerated in [Rule] 23(a)(3) and 23(a)(4), that is, typicality and adequacy." *Mayo v. Apropos Tech., Inc.,* 2002 WL 193393, at *3 (N.D. Ill. Feb. 7, 2002) (citing *Lax*, 1997 WL 461036, at *6).

**1.  Movant's Claims Are Typical**

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. *See Mayo,* 2002 WL 193393 at *4; *In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002) (citations omitted).

6

Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Mayo,* 2002 WL 193393 at *4.

Here, Movant's claims are typical of the claims asserted by the Class. Movant, like all members of the Class, alleges that Defendants violated the federal securities laws by disseminating false and misleading statements concerning the business, operations and financial prospects of Walgreens. Movant, like all members of the Class, purchased Walgreens common stock at prices artificially inflated by Defendants' misrepresentations and omissions, and was damaged thereby. Movant's interests are closely aligned with other Class members, and Movant's interests are, therefore, typical of the other members of the Class.

### 2.      Movant Is Adequate

The adequacy of representation requirement of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a movant's claims and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d 201, 265 (3d Cir. 2001).

Here, Movant has communicated with competent, experienced counsel concerning this case and has made this motion to be appointed lead plaintiff. Movant is not aware that any conflict exists between Movant's claims and those asserted on behalf of the Class.

### D.      Movant Is Presumptively the Most Adequate Plaintiff

The presumption in favor of appointing Movant as lead plaintiff may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

> (aa)      will not fairly and adequately protect the interest of the class; or

> (bb)      is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. §78 u-4(a)(3)(b)(iii)(I).

The presumption that Movant is the most adequate lead plaintiff is not, therefore, subject to rebuttal. Movant has suffered substantial financial losses and believes he has the largest financial interest in this case of any timely lead plaintiff movant. The ability of Movant to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses defendants could raise against him that would render Movant inadequate to represent the Class. Accordingly, Movant is presumptively the most adequate plaintiff and should be appointed lead plaintiff for the Class. *See In re Cendant Corp.*, 264 F.3d at 268.

Further, Movant has over 10 years of investing experience, lives in California, and is a restaurateur.

### III.   MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected The Rosen Law Firm, P.A. as Lead Counsel and Heffner Hurst as Liaison Counsel. Both firms are experienced in the area of securities litigation and class actions, and have successfully prosecuted securities litigations and securities fraud class actions on behalf of investors. *See* Hurst Decl., Exs. 4 & 5.

As a result of the firms' experience in litigation involving issues similar to those raised in this action, Movant's counsel have the skill and knowledge that will enable these two law firms to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by

8

approving the Movant's selection of Lead Counsel and Liaison Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, the Movant respectfully requests the Court issue an Order: (a) appointing the Movant as Lead Plaintiff of the Class; (b) approving The Rosen Law Firm P.A. as Lead Counsel and Heffner Hurst as Liaison Counsel for the Class; and (c) granting such other relief as the Court may deem to be just and proper.

Dated: March 31, 2025                    Respectfully submitted,

**HEFFNER HURST**

/s/*Matthew Hurst*
Matthew Hurst
30 North LaSalle Street, 12th Floor
Chicago, Illinois 60602
Tel: (312) 346-3466 x2
Email: mhurst@heffnerhurst.com

*[Proposed] Liaison Counsel for Plaintiff*
*And the Class*

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim
Laurence M. Rosen
275 Madison Avenue, 40th Floor
New York, New York 10118
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Plaintiff*
*And the Class*

9

## CERTIFICATE OF SERVICE BY ELECTRONIC MEANS

I, Matthew Hurst, one of the attorneys for plaintiff, hereby certify that on March 31, 2025, service of the foregoing *Memorandum of Law in Support of Motion of Orhan Kurt for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Counsel* was accomplished pursuant to ECF as to Filing Users and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

*/s/Matthew Hurst*
Matthew Hurst