UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| STEVE KLEIN, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>WALGREENS BOOTS ALLIANCE, INC., STEFANO PESSINA, ROSALIND G. BREWER, GINGER GRAHAM, TIMOTHY C. WENTWORTH, JAMES KEHOE, and MANMOHAN MAHAJAN,<br><br>        Defendants. | Civil Action No.  1:25-cv-01058<br><br><br>CLASS ACTION<br><br><br>Hon. Joan H. Lefkow |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF VICTORIANO TOYOS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

**TABLE OF CONTENTS**

Page(s)

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS.......................................................................................................2

ARGUMENT.........................................................................................................................6

I.      TOYOS SHOULD BE APPOINTED LEAD PLAINTIFF................................................6

      A.      Toyos Is Willing to Serve as Class Representative ...............................................7

      B.      Toyos Has the "Largest Financial Interest" in the Action ....................................8

      C.      Toyos Otherwise Satisfies the Requirements of Rule 23.......................................9

      D.      Toyos Will Fairly and Adequately Represent the Interests of
             the Class and Is Not Subject to Unique Defenses.................................................11

II.     LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED..........12

CONCLUSION....................................................................................................................13

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arreola v. Godinez*,
546 F.3d 788 (7th Cir. 2008) ........................................................................................10

*Bristol County Ret. Sys. v. Allscripts Healthcare Solutions, Inc.*,
No. 12 C 3297, 2012 WL 5471110 (N.D. Ill. Nov. 9, 2012)...................................10

*Chandler v. Ulta Beauty, Inc.*,
No. 18-cv-1577, 2018 WL 3141763 (N.D. Ill. June 26, 2018)...........................9, 10

*City of Sterling Heights Gen. Emples. Ret. Sys. v. Hospira, Inc.*,
No. 11 C 8332, 2012 WL 1339678 (N.D. Ill. Apr. 18, 2012) ..............................10

*Gumm v. Molinaroli*,
No. 16-CV-1093-PP, 2016 WL 6680462 (E.D. Wis. Nov. 14, 2016) .....................9

*Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) ......................................................................................9

*In re Comverse Technology, Inc. Securities Litigation*,
1:06-cv-01825 (E.D.N.Y.) ..............................................................................................12

*In re Molson Coors Brewing Co. Sec. Litig.*,
233 F.R.D. 147 (D. Del. 2005) ....................................................................................12

*In re Petrobras Securities Litigation*,
No. 14-cv-09662 (S.D.N.Y.)...........................................................................................12

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) .....................................................................................9

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
311 F.R.D. 373 (S.D.N.Y. 2015) ..................................................................................12

*Klein v. Altria Group, Inc. et al*,
No. 3:20-cv-00075 (E.D. Va.) .......................................................................................12

*Lax v. First Merchants Acceptance Corp.*,
Nos. 97 C 2715 *et al.*, 1997 WL 461036, 1997 U.S. Dist. LEXIS 11866 (N.D.
Ill. Aug. 6, 1997). ....................................................................................................8, 9

*Maiden v. Merge Techs., Inc.*,
Nos. 06-C-349, 2006 WL 3404777 (E.D. Wis. Nov. 21, 2006) ..........................12

*Takara Trust v. Molex Inc.*,
    229 F.R.D. 577 (N.D. Ill. 2005) ........................................................................................10

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008) ..............................................................................12

**Statutes**

17 C.F.R. § 240.10b-5 ...........................................................................................................1

15 U.S.C. § 78j(b) .................................................................................................................1

15 U.S.C. § 78u-4 ............................................................................... 1, 2, 7, 8, 9, 10, 11, 12

21 U.S.C. §§ 801-904 ...........................................................................................................3

31 U.S.C. §§ 3729-33 ...........................................................................................................3

Comprehensive Drug Abuse Prevention and Control Act of 1970 .................................................3

Controlled Substances Act ................................................................................... 1, 2, 3, 4, 5, 6

False Claims Act of 1863 ......................................................................................... 1, 3, 5, 6

Private Securities Litigation Reform Act of 1995 ...................................................... 7, 8, 11

Public Health Service Act ...............................................................................................3, 4

**Rules**

Fed. R. Civ. P. 23 ........................................................................................ 2, 6, 7, 9, 10

Victoriano Toyos ("Toyos") respectfully submits this Memorandum of Law in support of his motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) appointing Toyos as Lead Plaintiff on behalf of a class of all persons and entities who purchased or otherwise acquired Walgreens Boots Alliance, Inc. ("Walgreens" or the "Company") common stock between April 2, 2020 and January 16, 2025, inclusive (the "Class Period") (the "Class"); and (2) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

The Complaint in the above-captioned action (the "Action") alleges a significant fraud perpetrated on investors in Walgreens during the Class Period. Specifically, it is alleged that, during the Class Period, the above-captioned defendants ("Defendants") defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5), by misrepresenting Walgreens' business and prospects, specifically regarding the Company's widespread violations of federal law governing the dispensation of prescription medication and reimbursement for the same. *See* Dkt. No. 1 ("Complaint") ¶¶ 2-9. Walgreens investors, including Toyos, incurred significant losses resulting from the revelation of the foregoing misconduct through a corrective disclosure on January 17, 2025 revealing that the U.S. Department of Justice ("DOJ") filed a civil complaint alleging that Walgreens "dispensed millions of unlawful prescriptions in violation of the Controlled Substances Act (CSA) and then sought reimbursement for many of these prescriptions from various federal health care programs in violation the False Claims Act (FCA)." *See id.*

1

Pursuant to the PSLRA, the Court is to appoint as lead plaintiff the movant that possesses the largest financial interest in the outcome of the Action and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Toyos, with losses of approximately $3,584,808 in connection with his Class Period purchases of Walgreens common stock, believes that he has the largest financial interest in the relief sought in this Action. *See* Declaration of J. Alexander Hood II in Support of Motion ("Hood Decl."), Exhibit ("Ex.") A.

Beyond his considerable financial interest, Toyos also meets the applicable requirements of Rule 23 because his claims are typical of absent Class members and because he will fairly and adequately represent the interests of the Class.

To fulfill his responsibilities as lead plaintiff and vigorously prosecute this Action on behalf of the Class, Toyos has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, based on his significant financial interest and his commitment to overseeing this litigation, Toyos respectfully requests that the Court enter an order appointing him as Lead Plaintiff for the Class and approving his selection of Pomerantz as Lead Counsel for the Class.

## STATEMENT OF FACTS

Walgreens operates as a healthcare, pharmacy, and retail company in the U.S., the United Kingdom, Germany, and internationally. Complaint ¶ 2. The Company's operations are conducted through three reportable segments: U.S. Retail Pharmacy, International, and U.S. Healthcare. *Id.* The U.S. Retail Pharmacy segment includes the Walgreens business, which includes, among other things, the operations of retail drugstores, health and wellness services, and specialty and home delivery pharmacy services. *Id.* A significant percentage of sales for the U.S.

Retail Pharmacy segment is derived from the sale of prescription drugs, the majority of which are reimbursed by third-party payors, including federal healthcare programs. *Id.*

In connection with its sale of prescription drugs, Walgreens must comply with various federal statutes, including the Comprehensive Drug Abuse Prevention and Control Act of 1970 (the "Controlled Substances Act" or "CSA"), 21 U.S.C. §§ 801-904, which was enacted by Congress to prevent the diversion of controlled substances. *Id.* ¶ 3. Under the CSA, all registrants, including pharmacies, are required to "provide effective controls and procedures to guard against theft and diversion of controlled substances" and controlled substances may be dispensed only pursuant to prescriptions that are effective—*i.e.*, "for a legitimate medical purpose" and issued "by an individual practitioner acting in the usual course of his professional practice." *Id.* Further, when seeking reimbursement for these drugs from federal healthcare programs, Walgreens must submit accurate claims to avoid incurring penalties under the False Claims Act of 1863 (the "False Claims Act" or "FCA"), 31 U.S.C. §§ 3729-33, the federal government's primary litigation tool in combating fraud against the government. *Id.* Specifically, the FCA provides that anyone who (1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; or (2) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim, is liable to the U.S. for damages. *Id.*

Compliance with the CSA and FCA is particularly relevant to Walgreens' operations in the context of the U.S. opioid epidemic. *Id.* ¶ 4. Over the last two decades, overprescription, overuse and abuse of opioids has developed into a nationwide public health crisis that has ravaged communities across the U.S. *Id.* In 2017, the opioid crisis was declared a public health emergency under section 319 of the Public Health Service Act, and that declaration was renewed most recently in June 2024. *Id.* According to the Centers for Disease Control and Prevention, more than 645,000

3

people in the U.S. have died from overdoses involving opioids since the epidemic began, and nonfatal opioid overdoses have placed significant burdens on governments, health systems, and families. *Id.* In response to this crisis, Walgreens has described itself as "a leader in providing education and resources, as well as implementing best-in-class policies and procedures, to help combat opioid misuse and abuse." *Id.* Moreover, as part of its ostensible commitment to Environmental, Social and Governance progress, the Company has claimed to be "proud of its health-centered sustainability strategy that focuses on healthy communities, a healthy planet, a healthy and inclusive workplace and a sustainable marketplace." *Id.*

Notwithstanding these representations, Walgreens has been the subject of multiple legal proceedings in connection with its contributions to the U.S. opioid epidemic, including a 2013 settlement (the "2013 Agreement") reached with the DOJ and the U.S. Drug Enforcement Administration in which the Company acknowledged its failure to comply with the CSA when Walgreens failed to prevent the diversion—*i.e.* the transfer of any legally prescribed controlled substance from the individual for whom it was prescribed to another person for any illicit use—of certain opioids for abuse and illegal black market sales. *See id.* ¶ 5. Similarly, in May 2022, Walgreens announced that it had reached an opioid settlement of $683 million with the State of Florida to resolve all claims related to the distribution and dispensing of prescription opioid medications across the Company's pharmacies in the state. *Id.* Just months later, in November 2022, the Company announced that it had agreed in principle to a multi-state opioid settlement framework to resolve claims that Walgreens mishandled prescriptions of opioid painkillers, pursuant to which Walgreens would make up to approximately $4.95 billion in remediation payments to be paid out over 15 years. *Id.* In April 2024, the City of Philadelphia announced that it had reached a settlement agreement in its 2021 lawsuit against Walgreens for the Company's

role in supplying and perpetuating the opioid addiction crisis in Philadelphia, pursuant to which Walgreens would pay the city $110 million in compensation over five years. *Id.* As recently as September 2024, Walgreens reached a settlement with the City of Baltimore to resolve claims against the Company for its role in fueling the opioid epidemic in Baltimore, pursuant to which Walgreens agreed to pay the city $80 million. *Id.*

Consequently, Walgreens has made various commitments to implement measures designed to detect and prevent the diversion of controlled substances. *Id.* ¶ 6. For example, pursuant to the 2013 Agreement, Walgreens stated that it would train its pharmacists on identifying red flags of potential diversion to ensure compliance with the CSA and would maintain a "Department of Pharmaceutical Integrity" to coordinate its compliance efforts related to controlled substances. *Id.* However, as investors would subsequently learn, Walgreens continued to engage in widespread violations of the CSA and FCA in connection with its sales of prescription medications. *Id.*

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. *Id.* ¶ 7. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) contrary to the Company's purported commitment to improved regulatory compliance, Walgreens continued to engage in widespread violations of federal law governing the dispensation of prescription medication and reimbursement for the same; (ii) the foregoing conduct, when revealed, would subject Walgreens to a heightened risk of further regulatory scrutiny, civil liability, and reputational harm; (iii) Walgreens' revenues from the sale of prescription medications were unsustainable to the extent that they derived from unlawful conduct; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times. *Id.*

5

On January 17, 2025, the DOJ announced the filing of a civil complaint (the "DOJ Complaint") alleging that Walgreens "dispensed millions of unlawful prescriptions in violation of the Controlled Substances Act (CSA) and then sought reimbursement for many of these prescriptions from various federal health care programs in violation the False Claims Act (FCA)." *Id.* ¶ 8. Specifically, the DOJ's "complaint alleges that, from approximately August 2012 through the present, Walgreens knowingly filled millions of prescriptions for controlled substances that lacked a legitimate medical purpose, were not valid, and/or were not issued in the usual course of professional practice", including "prescriptions for dangerous and excessive quantities of opioids, prescriptions for early refills of opioids and prescriptions for the especially dangerous and abused combination of drugs known as the 'trinity,' which is made up of an opioid, a benzodiazepine and a muscle relaxant." *Id.* In addition, the DOJ Complaint expressly alleged that Walgreens was "aware of its obligation to exercise corresponding responsibility" and that its business practices were at odds with earlier commitments to "implement or maintain a variety of compliance measures moving forward." *Id.*

Following the DOJ's announcement, Walgreens' stock price fell $1.56 per share, or 12.06%, over the following two trading sessions, to close at $11.37 per share on January 21, 2025. *Id.* ¶ 9.

As a result of Defendants' wrongful acts and omissions, and the significant decline in the market value of the Company's securities when the truth was revealed, the plaintiff in the Action and other members of the Class have suffered significant damages.

<strong>ARGUMENT</strong>

## I.  TOYOS SHOULD BE APPOINTED LEAD PLAINTIFF

Toyos should be appointed Lead Plaintiff because, to his knowledge, he has the largest financial interest in the Action and otherwise strongly satisfies the requirements of Rule 23. The

6

PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action and to do so by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i)-(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Specifically, the Court "shall" appoint the presumptively "most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Toyos satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### A. Toyos Is Willing to Serve as Class Representative

On January 30, 2025, Pomerantz, counsel for the plaintiff in the Action, caused a notice to be published over *ACCESS Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "PSLRA Notice"), which announced that litigation had been filed against Defendants and which advised investors in Walgreens common stock that they had until March 31, 2025—*i.e.*, 60 days from the date of the PSLRA Notice—to file a motion to be appointed as lead plaintiff in the securities litigation against Walgreens and the other Defendants. *See* Hood Decl., Ex. B.

Toyos has filed the instant motion pursuant to the PSLRA Notice, and has attached a sworn Certification attesting that he is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C. Accordingly, Toyos satisfies the first requirement to serve as Lead Plaintiff of the Class.

### B. Toyos Has the "Largest Financial Interest" in the Action

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of his knowledge, Toyos has the largest financial interest of any Walgreens investor seeking to serve as Lead Plaintiff. For the purposes of lead plaintiff appointment pursuant to the PSLRA, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. Nos. 97 C 2715 *et al.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997).

During the Class Period, Toyos: (1) purchased 151,500 shares of Walgreens common stock; (2) expended $6,463,922 on these purchases; (3) retained 120,000 of his shares of Walgreens common stock; and (4) as a result of the disclosures of the fraud, incurred losses of approximately $3,584,808 in connection with his Class Period transactions in Walgreens common stock. *See* Hood Decl., Ex. A. To the extent that Toyos possesses the largest financial interest in the outcome of this litigation, he is the presumptive "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

8

C.       **Toyos Otherwise Satisfies the Requirements of Rule 23**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).

In making its determination that a lead plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, at this stage of the litigation, only a preliminary showing of typicality and adequacy is required. *See, e.g.*, *Chandler v. Ulta Beauty, Inc.*, No. 18-cv-1577, 2018 WL 3141763, at *5 (N.D. Ill. June 26, 2018) (finding movant "has satisfied its burden by making a preliminary showing that it satisfies the requirements of Rule 23"); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required."). Moreover, "in the context of motions for lead plaintiff inquiries, courts . . . do not engage in a 'wide-ranging analysis under Rule 23,' and generally focus on only typicality and adequacy." *Gumm v. Molinaroli*, No. 16-CV-1093-PP, 2016 WL 6680462, at *4 (E.D. Wis. Nov. 14, 2016) (quoting *Lax*, 1997 WL 461036, at *6); *see also In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA.").

The typicality requirement of Rule 23(a)(3) requires that "'[a] claim . . . arises from the same event or practice or course of conduct that gives rise to the claims of other class members'

9

and is 'based on the same legal theory.'" *Bristol County Ret. Sys. v. Allscripts Healthcare Solutions, Inc.*, No. 12 C 3297, 2012 WL 5471110, at *5 (N.D. Ill. Nov. 9, 2012) (quoting *Arreola v. Godinez,* 546 F.3d 788, 798 (7th Cir. 2008)). "A lead plaintiff meets the typicality requirements if its claims or defenses are typical of the claims or defenses of the class." *Takara Trust v. Molex Inc.*, 229 F.R.D. 577, 580 (N.D. Ill. 2005) (quoting Fed. R. Civ. P. 23(a)(3)).

Toyos's claims are typical of those of the Class. Toyos alleges, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts and/or by omitting to disclose material facts concerning Walgreens. Toyos, as did all Class members, purchased Walgreens common stock during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove Walgreens' share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

"A lead plaintiff meets the adequacy requirement [of Rule 23(a)(4)] if (1) its claims are not antagonistic or in conflict with those of the class; (2) it has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) it is represented by competent, experienced counsel who be able to prosecute the litigation vigorously." *Chandler*, 2018 WL 3141763, at *5 (quoting *City of Sterling Heights Gen. Emples. Ret. Sys. v. Hospira, Inc.*, No. 11 C 8332, 2012 WL 1339678, at *9 (N.D. Ill. Apr. 18, 2012)).

As set forth in greater detail below, in Pomerantz, Toyos has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submits his choice of Pomerantz to the Court for approval pursuant to 15 U.S.C.

10

§ 78u-4(a)(3)(B)(v). There is no evidence of antagonism or conflict between Toyos's interests and the interests of the Class. Toyos has submitted a signed Certification declaring his commitment to protecting the interests of the Class (*see* Hood Decl., Ex. C). In addition, the significant losses incurred by Toyos demonstrate that he has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.

Further demonstrating his adequacy, Toyos has submitted a Declaration attesting to, *inter alia*, his background, his investing experience, his understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class. *See* Hood Decl., Ex. D.

**D.** **Toyos Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses**

The presumption in favor of appointing Toyos as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The ability and desire of Toyos to fairly and adequately represent the Class has been discussed above. Toyos is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class. Accordingly, Toyos should be appointed Lead Plaintiff for the Class.

## II.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should only interfere with lead plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Maiden v. Merge Techs., Inc*., Nos. 06-C-349, 2006 WL 3404777, at *4 (E.D. Wis. Nov. 21, 2006)*; Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Here, Toyos has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith.  *See* Hood Decl., Ex. E.  In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, U.K., and Tel Aviv, Israel.  *See id.*  For more than 85 years, Pomerantz has represented defrauded investors.  *See id.*  As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States.  *See id.*  Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, 1:06-cv-01825 (E.D.N.Y.), in June 2010, and the $90 million settlement in *Klein v. Altria Group, Inc. et al*, No. 3:20-cv-00075 (E.D. Va.) in March 2022.  *See id.*

12

As a result of its extensive experience in litigation involving issues similar to those raised in the instant Action, Toyos's counsel, Pomerantz, has the skill, knowledge, expertise, and experience that will enable the firm to prosecute this Action effectively and expeditiously. Thus, the Court may be assured that by approving Toyos's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Toyos respectfully requests that the Court issue an Order: (1) appointing Toyos as Lead Plaintiff for the Class; and (2) approving his selection of Pomerantz as Lead Counsel for the Class.

Dated: March 31, 2025

Respectfully submitted,

POMERANTZ LLP

*/s/ J. Alexander Hood II*
J. Alexander Hood II
Jeremy A. Lieberman
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
ahood@pomlaw.com
jalieberman@pomlaw.com

POMERANTZ LLP
Joshua B. Silverman
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 229-8811
jbsilverman@pomlaw.com

*Counsel for Lead Plaintiff Movant Victoriano Toyos*
*and Proposed Lead Counsel for the Class*

13