# EXHIBIT B

3/27/25, 12:59 PM SHAREHOLDER ALERT: Pomerantz Law Firm Announces the Filing of a Class Action Against Walgreens Boots Alliance, Inc. and …

Case: 1:25-cv-01058 Document #: 23-2 Filed: 03/31/25 Page 2 of 6 PageID #:345

Back to the Newsroom

   



# SHAREHOLDER ALERT: Pomerantz Law Firm Announces the Filing of a Class Action Against Walgreens Boots Alliance, Inc. and Certain Officers – WBA

Topic:

Lawsuits

Thursday, 30 January 2025 07:15 PM

**NEW YORK, NY / [ACCESS Newswire](#) / January 30, 2025 /** Pomerantz LLP announces that a class action lawsuit has been filed against Walgreens Boots Alliance, Inc. ("Walgreens" or the "Company") (NASDAQ:WBA) and certain officers. The class action, filed in the United States District Court for the Northern District of Illinois, and docketed under 25-cv-01058, is on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Walgreens common stock between April 2, 2020 and January 16, 2025, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange

Case: 1:25-cv-01058 Document #: 23-2 Filed: 03/31/25 Page 3 of 6 PageID #:346

Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

If you are a shareholder who purchased or otherwise acquired Walgreens common stock during the Class Period, you have until March 31, 2025 to ask the Court to appoint you as Lead Plaintiff for the class. A copy of the Complaint can be obtained at www.pomerantzlaw.com. To discuss this action, contact Danielle Peyton at newaction@pomlaw.com or 646-581-9980 (or 888.4-POMLAW), toll-free, Ext. 7980. Those who inquire by e-mail are encouraged to include their mailing address, telephone number, and the number of shares purchased.

**[Click here for information about joining the class action]**

Walgreens operates as a healthcare, pharmacy, and retail company in the United States ("U.S."), the United Kingdom, Germany, and internationally. The Company's operations are conducted through three reportable segments: U.S. Retail Pharmacy, International, and U.S. Healthcare. The U.S. Retail Pharmacy segment includes the Walgreens business, which includes, among other things, the operations of retail drugstores, health and wellness services, and specialty and home delivery pharmacy services. A significant percentage of sales for the U.S. Retail Pharmacy segment is derived from the sale of prescription drugs, the majority of which are reimbursed by third-party payors, including federal healthcare programs.

In connection with its sale of prescription drugs, Walgreens must comply with various federal statutes, including the Comprehensive Drug Abuse Prevention and Control Act of 1970 (the "Controlled Substances Act" or "CSA"), 21 U.S.C. §§ 801-904, which was enacted by Congress to prevent the diversion of controlled substances. Under the CSA, all registrants, including pharmacies, are required to "provide effective controls and procedures to guard against theft and diversion of controlled substances" and controlled substances may be dispensed only pursuant to prescriptions that are effective-i.e., "for a legitimate medical purpose" and issued "by an individual practitioner acting in the usual course of his professional practice." See 21 C.F.R. § 1306.04(a). Further, when seeking reimbursement for these drugs from federal healthcare programs, Walgreens must submit accurate claims to avoid incurring penalties under the False Claims Act of 1863 (the "False Claims Act" or "FCA"), 31 U.S.C. §§ 3729-33, the federal government's primary litigation tool in combating fraud against the government. Specifically, the FCA provides that anyone who (1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; or (2) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim, is liable to the U.S. for damages. 31 U.S.C. § 3279(a)(1)(A)-(B).

3/27/25, 12:59 PM SHAREHOLDER ALERT: Pomerantz Law Firm Announces the Filing of a Class Action Against Walgreens Boots Alliance, Inc. and …

Case 1:25-cv-01053 Document #: 23-2 Filed: 03/31/25 Page 4 of 6 PageID #:347

Compliance with the CSA and FCA is particularly relevant to Walgreens' operations in the context of the U.S. opioid epidemic. Over the last two decades, overprescription, overuse and abuse of opioids has developed into a nationwide public health crisis that has ravaged communities across the U.S. In 2017, the opioid crisis was declared a public health emergency under section 319 of the Public Health Service Act, and that declaration was renewed most recently in June 2024. According to the Centers for Disease Control and Prevention, more than 645,000 people in the U.S. have died from overdoses involving opioids since the epidemic began, and non-fatal opioid overdoses have placed significant burdens on governments, health systems, and families. In response to this crisis, Walgreens has described itself as "a leader in providing education and resources, as well as implementing best-in-class policies and procedures, to help combat opioid misuse and abuse." Moreover, as part of its ostensible commitment to Environmental, Social and Governance ("ESG") progress, the Company has claimed to be "proud of its health-centered sustainability strategy that focuses on healthy communities, a healthy planet, a healthy and inclusive workplace and a sustainable marketplace."

Notwithstanding these representations, Walgreens has been the subject of multiple legal proceedings in connection with its contributions to the U.S. opioid epidemic, including a 2013 settlement (the "2013 Agreement") reached with U.S. Department of Justice ("DOJ") and the U.S. Drug Enforcement Administration in which the Company acknowledged its failure to comply with the CSA when Walgreens failed to prevent the diversion-i.e. the transfer of any legally prescribed controlled substance from the individual for whom it was prescribed to another person for any illicit use-of certain opioids for abuse and illegal black market sales. Similarly, in May 2022, Walgreens announced that it had reached an opioid settlement of $683 million with the State of Florida to resolve all claims related to the distribution and dispensing of prescription opioid medications across the Company's pharmacies in the state. Just months later, in November 2022, the Company announced that it had agreed in principle to a multi-state opioid settlement framework to resolve claims that Walgreens mishandled prescriptions of opioid painkillers, pursuant to which Walgreens would make up to approximately $4.95 billion in remediation payments to be paid out over 15 years. In April 2024, the City of Philadelphia announced that it had reached a settlement agreement in its 2021 lawsuit against Walgreens for the Company's role in supplying and perpetuating the opioid addiction crisis in Philadelphia, pursuant to which Walgreens would pay the city $110 million in compensation over five years. As recently as September 2024, Walgreens reached a settlement with the City of Baltimore to resolve claims against the Company for its role in fueling the opioid epidemic in Baltimore, pursuant to which Walgreens agreed to pay the city $80 million.

Consequently, Walgreens has made various commitments to implement measures designed to detect and prevent the diversion of controlled substances. For example, pursuant to the 2013 Agreement, Walgreens stated that it would train its pharmacists on identifying red flags of potential diversion to ensure compliance with the CSA and would maintain a "Department of Pharmaceutical Integrity" to coordinate its compliance efforts related to controlled substances. However, as investors would subsequently learn, Walgreens continued to engage in widespread violations of the CSA and FCA in connection with its sales of prescription medications.

The complaint alleges that, throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) contrary to the Company's purported commitment to improved regulatory compliance, Walgreens continued to engage in widespread violations of federal law governing the dispensation of prescription medication and reimbursement for the same; (ii) the foregoing conduct, when revealed, would subject Walgreens to a heightened risk of further regulatory scrutiny, civil liability, and reputational harm; (iii) Walgreens' revenues from the sale of prescription medications were unsustainable to the extent that they derived from unlawful conduct; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

On January 17, 2025, the DOJ announced the filing of a civil complaint (the "DOJ Complaint") alleging that Walgreens "dispensed millions of unlawful prescriptions in violation of the Controlled Substances Act (CSA) and then sought reimbursement for many of these prescriptions from various federal health care programs in violation the False Claims Act (FCA)." Specifically, the DOJ's "complaint alleges that, from approximately August 2012 through the present, Walgreens knowingly filled millions of prescriptions for controlled substances that lacked a legitimate medical purpose, were not valid, and/or were not issued in the usual course of professional practice", including "prescriptions for dangerous and excessive quantities of opioids, prescriptions for early refills of opioids and prescriptions for the especially dangerous and abused combination of drugs known as the 'trinity,' which is made up of an opioid, a benzodiazepine and a muscle relaxant." In addition, the DOJ Complaint expressly alleged that Walgreens was "aware of its obligation to exercise corresponding responsibility" and that its business practices were at odds with earlier commitments to "implement or maintain a variety of compliance measures moving forward."

Following the DOJ's announcement, Walgreens' stock price fell $1.56 per share, or 12.06%, over the following two trading sessions, to close at $11.37 per share on January 21, 2025.

3/27/25, 12:59 PM SHAREHOLDER ALERT: Pomerantz Law Firm Announces the Filing of a Class Action Against Walgreens Boots Alliance, Inc. and …

Case: 1:25-cv-01058 Document #: 23-2 Filed: 03/31/25 Page 6 of 6 PageID #:349

Pomerantz LLP, with offices in New York, Chicago, Los Angeles, London, Paris, and Tel Aviv, is acknowledged as one of the premier firms in the areas of corporate, securities, and antitrust class litigation. Founded by the late Abraham L. Pomerantz, known as the dean of the class action bar, Pomerantz pioneered the field of securities class actions. Today, more than 85 years later, Pomerantz continues in the tradition he established, fighting for the rights of the victims of securities fraud, breaches of fiduciary duty, and corporate misconduct. The Firm has recovered billions of dollars in damages awards on behalf of class members. See www.pomlaw.com.

Attorney advertising. Prior results do not guarantee similar outcomes.

**SOURCE:** Pomerantz LLP

## Solutions

Public Companies

Private Companies

Agencies

Legal

Resellers & Market Research

## Public Relations Products

Access PR Platform

Press Release Distribution

Media Database